OPINION
Appellant, David T. Logue, timely appeals from his conviction for persistent disorderly conduct following a jury trial in the Belmont County Court, Eastern Division. For the following reasons, we affirm Appellant's conviction.
On November 9, 1996 at 2:25 a.m., Shadyside Police Officer Steve Studence noticed Appellant standing in the street in front of the Tiger Pub in Mead Township. Appellant was yelling and pointing at a group of people who were gathered at the entrance of the bar. Officer Studence asked Appellant to take a seat in his cruiser and Appellant complied. Officer Studence drove a short distance, parked the cruiser and asked Appellant about the nature of the disturbance. Appellant responded by calling the officer a "motherfucker," "making threats" and asking if the officer wanted to, "fuck with him." Officer Studence told Appellant to calm down several times.
Meanwhile, Officer Trigg of the Shadyside Police Department arrived at the bar and questioned bystanders. Learning that a knife may have been involved in the dispute, Officer Trigg notified Officer Studence of that possibility. The officers conducted a pat-down search of Appellant but did not find a knife. Appellant continued to make statements such as, "why are you going to fuck with me now," "everyone fucks with me" and "come on and dish it up you motherfucker." Appellant also repeatedly stated, "I'm going to fuck them up," as he stared at the group gathered in front of the bar. Appellant was eventually placed under arrest for persistent disorderly conduct.
As officers attempted to handcuff Appellant, he was not cooperative. Later, when the officers were switching handcuffs, Appellant again struggled. Appellant was then charged with resisting arrest. While being transported to the Belmont County Jail, Appellant was belligerent and continued to make verbal threats toward Officer Studence.
Appellant was tried on March 19, 1997. A jury acquitted Appellant of resisting arrest but found Appellant guilty of persistent disorderly conduct. In a judgment entry filed March 19, 1997, the court sentenced Appellant to thirty days in jail with twenty days suspended. The court also ordered Appellant to pay a one-hundred dollar ($100.00) fine plus court costs. The sentence was stayed pending this appeal.
Appellant filed his notice of appeal on April 7, 1997. His first assignment of error alleges:
 "THE DEFENDANT DID NOT RECEIVE A FAIR TRIAL DUE TO HIS BEING PROVIDED WITH INEFFECTIVE ASSISTANCE OF COUNSEL."
Appellant cites several instances as the basis for his claim of ineffective assistance of counsel. First, Appellant contends that during trial he was taking a muscle relaxant, Flexeril, due to a back injury. Appellant claims that this medication made him sedate and not completely alert. Appellant also claims that the medication made him appear white and sickly. Appellant alleges that he made his attorney aware of this condition and that he was prejudiced by his attorney's failure to move for a continuance. Next, Appellant asserts that during the trial he observed a juror with his eyes closed and apparently sleeping. Appellant alleges that he was prejudiced by his attorney failing to call this to the court's attention. Finally, Appellant claims that he was prejudiced by his trial counsel's failure to object to Officer Trigg's testimony that he had arrested Appellant on a prior occasion.
This assignment of error lacks merit. In an appellate review as to whether a criminal defendant has received adequate representation, the defendant has the burden of proving ineffective assistance. State v. Lott (1990), 51 Ohio St.3d 160,175. To meet this burden of proof, the defendant must show, ". . . first, that counsel's performance was deficient and, second, that the deficient performance prejudiced his defense so as to deprive the defendant of a fair trial." Id., 174, citingStrickland v. Washington (1984), 466 U.S. 668, 687. In order to establish that counsel is deficient, Appellant must demonstrate that his performance fell, "below an objective standard of reasonable representation." State v. Keith (1997), 79 Ohio St.3d 514,534. To then demonstrate that he was prejudiced by this alleged deficient performance, Appellant "* * * must prove that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." Id. In Ohio, a properly licensed attorney is presumed competent. Lott, 175. Moreover, strategic or tactical decisions will not form a basis for a claim of ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45,48-49.
With respect to counsel's failure to seek a continuance and to object to a "sleeping" juror, we note that the scope of our review, "* * * should be limited to what transpired in the trial court as reflected by the record made of the proceedings."State v. Ishmail (1978), 54 Ohio St.2d 402, 406. Appellant's aforementioned allegations are based on facts not present in the record. As such, neither allegation can be addressed upon direct appeal. "It is impossible for this court to determine on a direct appeal from a conviction whether an attorney was ineffective in his representation of a criminal defendant, where the allegation of ineffectiveness is based on facts dehors the record." State v. Gibson (1980), 69 Ohio App.2d 91, 95.
Appellant's contention that his trial counsel failed to object to the testimony of Officer Trigg arises from counsel's examination of the police officer. Counsel was inquiring whether the officer was familiar with Appellant, whereupon the officer responded that, "I had arrested the defendant before." Tr. 42. Arguably, trial counsel could have objected to Officer Trigg's answer as beyond the scope of the question as well as inadmissible pursuant to Evid.R. 404(B). Assuming that trial counsel was unreasonable in failing to object, Appellant must still demonstrate that he was prejudiced by this failure; he must show that there was a reasonable probability that the outcome of the trial would have been different "but for" the alleged error. State v. Keith, supra, 534. "Reasonable probability" has been defined as ". . . a probability sufficient to undermine confidence in the outcome" of the trial. State v.Bellish (Mar. 31, 1998), Mahoning App. No. 87-CA-78, unreported, 4. Appellant has made no attempt to demonstrate how counsel's failure to object resulted in prejudice. He has demonstrated no reasonable probability that the outcome of the trial would have been different had counsel objected to the testimony. Our own review of the record convinces us that the alleged error was not so serious that it would undermine our confidence in the result of the trial. The record before us shows an adequate basis on which Appellant could have been convicted outside of the testimony that Officer Trigg previously arrested Appellant and that this brief mention constituted merely a nebulous implication of a past arrest.
For the foregoing reasons we hold that Appellant's first assignment of error lacks merit.
Appellant's second assignment of error alleges:
 "THE CHARGE AGAINST THE DEFENDANT VIOLATED HIS FIRST AMENDMENT RIGHT OF FREE SPEECH."
Although he admits the language he used was crude, Appellant argues that the First Amendment to the United States Constitution protects him from prosecution for directing such crude language toward police. Appellant argues that to proscribe speech, an ordinance must limit its scope to fighting words that tend to inflict injury or incite an immediate breach of the peace.
We agree with Appellant that to be prosecuted, his speech must constitute "fighting words." We have recently restated that, in the context of a charge of disorderly conduct, speech must constitute "fighting words"; words that by their very utterance tend to inflict injury or provoke the average person to an immediate retaliatory breach of the peace. State v.Dotson (March 24, 1999), Mahoning App. No. 98 CA 103, unreported, 2. The test is whether under the circumstances a reasonable person would find the language annoying or alarming and would be provoked to immediately breach the peace. Id.;Warren v. Patrone (1991), 75 Ohio App.3d 595, 598. This is an objective standard and it is immaterial whether a person is actually provoked to respond violently. Warren v. Patrone, 598.
Although we agree with Appellant's statement of the law, we do not agree with his conclusion that none of his speech constituted the proscribed fighting words. At trial, Officer Studence testified that Appellant, "* * * asked me if I wanted to fuck with him." Tr. 3. Officer Studence testified that Appellant offered similar challenges shortly thereafter. Tr. 4, 5. In addition, Officer Studence stated that Appellant challenged him, "* * * if you want to fuck with me * * * let's dish it up." Tr. 6. By his testimony, Officer Studence felt threatened by Appellant's statements. He stated that Appellant continued to make threats toward him following the search of Appellant and while in transport to the Belmont County Jail. Tr. 26, 9.
A reasonable person could interpret Appellant's statements to be an invitation to an altercation which would provoke an immediate violent response. Appellant's use of his apparent favorite word goes beyond the mere use of the word to emphasize his displeasure with his treatment. Rather, it appears to be a direct entreaty for confrontation. Appellant's request that the officers "dish it up" confirms such an interpretation. Such an inducement to violence can be termed to be archetypical "fighting words."
Although the record reflects that the language used by Appellant could constitute fighting words, Appellant's conviction was not exclusively dependent upon any verbal exchange with police. Appellant was charged with and convicted of violating R.C. § 2917.11(A)(1) which provides that:
 "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:
 "(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."
The Ohio Supreme Court has determined that R.C. § 2917.11(A)(1) contains a component which does not concern the prohibition of speech or expression. State v. Reeder (1985),18 Ohio St.3d 25, 26. Rather, this section of the Revised Code contains elements prohibiting behavior. Id.
Our prior analysis satisfies the prohibition against making threats. Furthermore, the record contains instances of Appellant's turbulent behavior. In the context of Ohio's disorderly conduct statute, the word "turbulent" means, "* * * tumultuous behavior or unruly conduct characterized by violent disturbance or commotion." Id. Officer Studence observed Appellant screaming and pointing his finger at a crowd of people. Tr. 8. Officer Studence testified that when he conducted the pat down search, Appellant became very belligerent, making threats directed at the bystanders in addition to the officer himself. Tr. 5. According to Officer Studence, Appellant remained belligerent during the entire encounter including during his transportation to the jail. Tr. 28. Officer Studence testified that Appellant `* * * kept being belligerent and making threats * * *" toward him and Officer Trigg. Tr. 26. Officer Studence also stated that Appellant, "kept wanting to fight" and that when being hand cuffed, Appellant challenged the officers to, "take him to the ground." Tr. 6, 7. Likewise, Officer Trigg testified that when asked to submit to a pat down search, Appellant flailed his arms about while cursing at the officers. Tr. 35. Such behavior certainly constitutes "turbulent" behavior within the meaning of the disorderly conduct statute.
As we have determined that Appellant's language and physical actions constituted a violation of R.C. § 2917.11(A)(1) as regards threats of harm and turbulent behavior, we hold that Appellant was not improperly convicted of disorderly conduct. Thus, Appellant's second assignment of error lacks merit.
For all the foregoing reasons, we affirm the jury verdict and sentence of the trial court.
Donofrio, J., Vukovich, J., concurs.
APPROVED:
 ________________________ WAITE, J.