The STATE of Ohio, Appellee,

v.

PATTON, Appellant.*

[Cite as *State v. Patton* (1995), 106 Ohio App.3d 736.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940871.

Decided Oct. 11, 1995.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 75 Ohio St.3d 1405, 661 N.E.2d 755.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Ronald W. Springman,* Assistant Prosecuting Attorney, for appellee.

*Hal R. Arenstein,* for appellant.

GORMAN, Presiding Judge.

The defendant-appellant, Daryl Patton, appeals from the conviction entered upon the jury's verdict finding him guilty of having a weapon under disability in violation of R.C. 2923.13 and of the accompanying firearm and causing-physical-harm specifications. In his two assignments of error, which address only the physical-harm specification to the weapon-under-disability count, he contends that (1) the trial court committed prejudicial error by refusing to instruct the jury on self-defense with regard to the physical-harm specification, and (2) the guilty verdict as to the physical-harm specification was against the manifest weight of the evidence. Both assignments of error are well taken.

Patton was indicted for the murder of Timothy Norris, and for having a weapon under a disability. The weapon-under-disability count also contained a firearm specification and a causing-physical-harm specification. The evidence

established that Norris asked Patton to retrieve a .38–caliber Smith & Wesson revolver while the pair were riding in Norris's van. After Patton returned with the weapon and gave it to Norris, Norris fired it twice out the driver's window. Expressing anger because the revolver left residue on his hand, Norris exited from the van. Holloway, a passenger in the van, heard Patton yelling, "No Tim, No Tim," and then heard three or four shots. Holloway said that he did not see the shots fired, but that he saw Norris take several steps and then collapse. When a police criminalist arrived at the scene, he found Norris dead in the middle of the street next to the van. Near Norris's hand was a .25–caliber handgun with one live round in the chamber and four live rounds in the clip. A firearms examiner testified that it had been fired, but was unable to determine how recently. The deputy coroner who performed an autopsy on Norris confirmed the presence of substantial alcohol in Norris's body. He described an entrance and exit wound in Norris's upper right arm and another entrance and exit wound in the upper right chest area. As the only witness for the defense, Patton admitted that he shot and killed Norris, but claimed that he acted in self-defense when Norris pointed the .25–caliber automatic handgun at him and said, "We both going to die tonight."

Although the trial court instructed the jury on self-defense relative to the murder count, it refused to give a self-defense instruction relative to the physical-harm specification as requested by Patton. The jury found Patton not guilty of the murder count, but returned verdicts of guilty on the weapon-under-disability count and both specifications. The trial court imposed an indefinite sentence of three to five years in light of the physical-harm specification, with an additional three years' actual incarceration for the firearm specification.

Whether self-defense is an affirmative defense to a physical-harm specification is an issue of first impression in Ohio. The pertinent part of R.C. 2941.143 provides:

"Imposition of an indefinite term * * * is precluded unless the indictment, count in the indictment, or information charging the offense specifies * * * that, during the commission of the offense, the offender *caused physical harm to any person* or made an actual threat of physical harm to any person with a deadly weapon." (Emphasis added.)

The state argues that self-defense is precluded as a defense to a physical-harm specification because R.C. 2941.143 is a strict liability statute. The state argues in the alternative that if we hold that R.C. 2941.143 is not a strict liability statute, recklessness is the appropriate mental state for the physical-harm specification, which also precludes self-defense. R.C. 2901.21 and 2901.22(C).

In its analysis, the state compares the similarities of a physical-harm specification to a firearm specification provided in R.C. 2929.71, which, likewise, elevates

the penalty for an offense because of a defendant's dangerous conduct. The argument ignores, however, that (1) R.C. 2941.143 does not plainly indicate a purpose to impose strict liability as required by R.C. 2901.21(B), and (2) unlike the element of causation in R.C. 2941.143, a firearm specification depends solely on possession of the firearm, which, as Patton argues, discounts considerations of culpability.

Although Patton does not challenge his conviction for having a weapon while under a disability, there is authority that, under limited circumstances, the accused should not be penalized for having a weapon under a disability when momentary possession of the weapon was solely for the purpose of using it in self-defense. *State v. Fryer* (1993), 90 Ohio App.3d 37, 627 N.E.2d 1065; *State v. Pauley* (1982), 8 Ohio App.3d 354, 8 OBR 466, 457 N.E.2d 864; *State v. Hardy* (1978), 60 Ohio App.2d 325, 14 O.O.3d 289, 397 N.E.2d 773. The facts in these cases are distinguishable, but they illustrate the point that self-defense may be available to defendants to justify even a strict liability offense. The same reasoning should extend to "cause" as used in a physical-harm specification.

Because we can find no cases speaking to self-defense as an affirmative defense to a physical-harm specification, we look for guidance to how courts interpret the "cause" element used similarly in R.C. 2903.04, involuntary manslaughter. In *State v. Johnson* (1983), 6 Ohio St.3d 420, 424, 6 OBR 466, 469–470, 453 N.E.2d 595, 599, reversed on other grounds (1984), 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425, the Ohio Supreme Court examined the language "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony" in R.C. 2903.04. Contrasting this language in the offense of murder with the offense of involuntary manslaughter, the Supreme Court stated, "Involuntary manslaughter involves a lesser mental state." *Id.* at 424, 6 OBR at 469, 453 N.E.2d at 599.

█ In *State v. Ziko* (1991), 71 Ohio App.3d 832, 837, 595 N.E.2d 1019, 1022–1023, the Eighth District identified a fifth mental state in addition to purposely, knowingly, recklessly, and negligently. According to *Ziko*, the mental state for "cause" is whether the act was committed under circumstances "in which a reasonable person would foresee that it would cause the death of the victim." Despite the silence of R.C. 2941.143 as to culpable mental state, we agree with *Ziko* that causation assumes some degree of intent by the perpetrator of the act. Therefore, we conclude that R.C. 2941.143 does not impose strict liability.

█ Accepting the state's alternative argument, that recklessness is the appropriate culpable mental state, we find no authority for the proposition that recklessness precludes for the defense of self-defense. The Supreme Court of Ohio has held that the test for whether self-defense applies is subjective. *State v.*

*Koss* (1990), 49 Ohio St.3d 213, 216, 551 N.E.2d 970, 973–974. Whether the actor acts purposely, knowingly, or recklessly makes no difference. The salient point for the availability of self-defense focuses on the actor's mental state at the time the act is committed, rather than on the threshold mental state in the statute.

■ The mental state "recklessness" assumes that the actor intends the act, but not the harm. To assert self-defense, the actor must first admit that he not only intended the act but also the harm. In this case, Patton conceded that he intentionally shot Norris, but asserted that he was justified because he was acting in self-defense.

■ Unless the statute imposes strict liability, self-defense applies *any time* that the following elements are present: (1) the defendant was not at fault in creating the situation giving rise to the confrontation; (2) the defendant had a bona fide belief that he was in imminent danger of bodily harm and that he had only the use of force as a reasonable means of escape from the danger; and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279; *Koss, supra.* Self-defense is available as a defense to a specification as well as to an offense. Accordingly, when the jury acquitted Patton of the murder count on grounds of self-defense, Patton was entitled to acquittal on the specification. The trial court incorrectly rejected Patton's request for an instruction on self-defense relative to the physical-harm specification. Because self-defense was a valid defense to the physical-harm specification, after the jury returned its not-guilty verdict on the murder charge on self-defense grounds, it was incumbent on the trial court to enter a judgment of acquittal on the physical-harm specification under Crim.R. 29.

For these reasons, we reverse with regard to the physical-harm specification, we remand to the trial court for resentencing and for the entry of a judgment of acquittal on the physical-harm specification, and we affirm the conviction entered upon the jury verdict in all other aspects.

*Judgment accordingly.*

MARIANNA BROWN BETTMAN and PAINTER, JJ., concur.